IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MR. COOPER GROUP, INC.,            §
                                   §
              Plaintiff,           §
                                   §
VS.                                §     Civil Action No. 3:24-CV-2857-D
                                   §
NATIONAL UNION FIRE                §
INSURANCE COMPANY OF               §
PITTSBURGH, PA, et al.,            §
                                   §
              Defendants.          §

MEMORANDUM OPINION
AND ORDER

In this diversity action, plaintiff Mr. Cooper Group, Inc. ("Mr. Cooper") moves under

Fed. R. Civ. P. 37(a) to compel deposition testimony, answers to interrogatories, and the

production of documents that defendant National Union Fire Insurance Company of

Pittsburgh, PA ("National Union") has withheld. For the reasons that follow, the court grants

the motion to compel in part and orders the parties to meet and confer regarding Mr.

Cooper's Rule 30(b)(6) notice.

I

This diversity action arises out of the alleged failures of defendant Berkshire

Hathaway Specialty Insurance Company ("Berkshire") and National Union to indemnify Mr.

Cooper for losses that Mr. Cooper alleges resulted from a criminal cyberattack. National

Union sold Mr. Cooper the National Union Policy ("National Union Policy"), a financial

institution bond that provides general coverage for listed losses. Mr. Cooper also purchased

add-on coverage through Endorsement No. 6 of the National Union Policy, which is entitled the Computer Crime Coverage Rider ("Rider") (The court will refer to the National Union Policy and the Rider collectively as the "Policies."). Berkshire sold Mr. Cooper an excess policy that continues coverage after the National Union Policy's deductible and limits are exhausted. Mr. Cooper alleges that Berkshire and National Union violated their obligations under the respective policies by failing to pay the amount that Mr. Cooper claimed for losses it incurred due to the cyberattack.

Mr. Cooper brought this lawsuit, alleging various state-law claims. Mr. Cooper's instant motion seeks to compel National Union to produce a witness for deposition under Rule 30(b)(6), respond to interrogatories to which National Union objected, and produce documents that National Union withheld as privileged. National Union opposes the motion, which the court is deciding on the briefs, without oral argument.

II

Under Rule 26(b)(1), "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." And, under Rule 37(a)(3)(B), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" when the party from whom discovery is sought fails to produce requested documents or respond to an interrogatory or request for admission. The burden is on the party resisting discovery—here, National Union—to establish why the motion to compel should not be granted. *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)

- 2 -

(Ramirez, J.); *see also Lozano v. Dorel Juv. Grp.*, 2010 WL 11619687, at *1 (N.D. Tex. May 26, 2010) (Means, J.) ("Generally, the burden is on the party seeking to avoid compliance with a discovery request to show that the request is improper[,]" such that "in the context of a motion to compel, the party who opposes discovery must 'show specifically how [the request] is not relevant or how [the request] is overly broad, burdensome, or oppressive.'" (second and third alterations in original) (quoting *McLeod, Alexander, Powell and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990))).

### III

Mr. Cooper moves to compel National Union to produce a witness to testify on underwriting topics, which presents the question whether Mr. Cooper's deposition notice complies with Rules 30(b)(6) and 26.

### A

Rule 30(b)(6) governs deposition notices or subpoenas directed to an organization and "imposes burdens on both the discovering party and the designating party." *Johnson v. Big Lots Stores, Inc.*, 2008 WL 6928161, at *2 (E.D. La. May 2, 2008). "The effectiveness of Rule 30(b)(6) 'bears heavily upon the parties' reciprocal obligations' to identify topics with particularity and prepare witnesses in good faith." *Westley v. Out W. Express, LLC*, 2023 WL 8934937, at *3 (E.D. La. Dec. 27, 2023) (quoting *Lipari v. U.S. Bancorp, N.A.*, 2008 WL 4942618, at *5 (D. Kan. Oct. 16, 2008)).

The discovering party's deposition notice must "describe with reasonable particularity the matters for examination" under Rule 30(b)(6). Rule 30(b)(6). This requirement aims to

- 3 -

enable the designating party "to identify the person who is best situated to answer questions about the matter, or to make sure that the person selected to testify is able to respond regarding that matter." 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2103, at 454 (3d ed. 2010). In light of this goal, the discovering party must "take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Matherne v. Huntington Ingalls Inc.*, 2024 WL 21569, at *3 (E.D. La. Jan. 2, 2024) (quoting *Pauls v. Prudential Ins. Co. of Am.*, 2016 WL 6397564, at *4 (N.D. Tex. Oct. 28, 2016) (Horan, J.)). "The court may limit a Rule 30(b)(6) deposition notice to the extent that it requests the organization to designate an agent to testify on topics of information that are overly broad, vague, or ambiguous." *United Healthcare Servs., Inc. v. Next Health, LLC*, 2021 WL 9146632, at *2 (N.D. Tex. Oct. 13, 2021) (Rutherford, J.) (internal quotation marks omitted) (quoting *Dean v. Shell Pipeline Co.*, 2020 WL 2813521, at *3 (M.D. La. May 29, 2020)). The discovering party's deposition notice is also subject to limitations under Rule 26.

After the discovering party satisfies its burden, the designating party must choose "one or more officers, directors, or managing agents" or "other persons who consent" to testify on its behalf. Rule 30(b)(6). The designating party has a "duty to present and prepare a Rule 30(b)(6) designee beyond matters personally known to that designee or to matters in which that designee was personally involved." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (citation omitted). The designating party "must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or

- 4 -

other sources." *Id.* The designee's statements are "binding" on the designating party because, by making the designation, the designating party "represents that the [designee] has authority to speak on [its] behalf." *Id.* at 433. The discovering party may also use the designee's statements for any purpose. *See* Rule 32(a)(3) ("An adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's . . . designee under Rule 30(b)(6)[.]"). Because the employee's statements are binding and the adverse party can use them for any purpose, this discovery device can elicit potentially impactful testimony. The court must therefore ensure that the discovering party has met its initial burden under Rule 30(b)(6). *See Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank*, 2017 WL 9400671, at *2 (S.D.N.Y. Apr. 27, 2017).

B

As a preliminary matter, the court considers National Union's contention that testimony on underwriting is irrelevant to Mr. Cooper's breach of contract claim because the provisions of the Policies are unambiguous.

Whether an insurance policy is ambiguous is a question of law "for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous[,]" and a court will not admit extraneous evidence to interpret its meaning. *Id.* For purposes of the instant motion, however, the court need not decide whether the Policies' provisions are ambiguous. "[The

- 5 -

court] is merely determining whether such information is discoverable under Rule 26(b)(1)." *Meritage Homes of Tex., LLC v. AIG Specialty Ins. Co.*, 2024 WL 221448, at *6 (W.D. Tex. Jan. 18, 2024).

Mr. Cooper has demonstrated a possibility that testimony on underwriting may be relevant to a claim or defense. The parties' dispute concerns whether the Policies' definition of "loss" covers the costs and expenses incurred by Mr. Cooper following the cyberattack and whether the "theft of confidential information" exclusion applies to Mr. Cooper's claim for coverage. The underwriting testimony "may shed light on which interpretation of the [Policies] is most reasonable" and whether National Union handled Mr. Cooper's claim in bad faith. *Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*, 2021 WL 2662178, at *3 (E.D. Tex. June 29, 2021); *see also Trammell Crow Residential Co. v. St. Paul Fire & Marine Ins. Co.*, 2013 WL 12124331, at *2 (N.D. Tex. Aug. 21, 2013) (Godbey, J.) (concluding that underwriting information was relevant to interpretation of policy exclusions); *Tim Long Plumbing, Inc. v. Kinsale Ins. Co.*, 2020 WL 6559869, at *5 (E.D. Tex. Nov. 9, 2020) (compelling production of "portions [of underwriting file] that reference [d]efendant's evaluation of what risks it expected to cover in the policy and how it interpreted the various policy terms."). That National Union expects to prevail on the policy interpretation issue at summary judgment does not obviate its Rule 26 discovery obligations. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. 2018) (Horan, J.) ("[A] party . . . is not excused from being subjected to[]discovery simply because the discovery is relevant to a claim on which the resisting party believes that [it] will or should prevail."); *see also Union*

- 6 -

*Pac. Res. Co. v. Aetna Cas. & Sur. Co.*, 894 S.W.2d 401, 405 (Tex. App. 1994, writ denied) ("[T]he trial court should have permitted discovery to determine the intent of the parties from . . . circumstances surrounding the making of the policy.").

Accordingly, the court concludes that underwriting is an appropriate topic for a Rule 30(b)(6) deposition.

C

Notwithstanding the above conclusion, Mr. Cooper does not specify its proposed deposition topics with reasonable particularity.[1]

1

Topics Nos. 2-3, 7, 9, and 10 are overbroad insofar as they call for testimony on topics unrelated to Mr. Cooper's claim. Topics Nos. 2, 3, 9, and 10 reference predecessor policies or other riders. Other versions of the National Union Policy or Rider that are not at issue here are irrelevant to the claims and defenses in this action. *See Great W. Cas. Co. v. Deepwell Energy Servs., LLC*, 2024 WL 3087935, at *2 (W.D. Tex. Feb. 14, 2024), *objections overruled*, 2024 WL 4103369 (W.D. Tex. May 14, 2024). Similarly, Topic No. 7—which concerns "[a]ll underwriting instructions, training, guidelines or standards," implemented by the deponent, "regardless of whether or not [these materials] were consulted . . . in connection with the underwriting of the Policy," P. App. (ECF No. 39-2) at 75—calls

---

[1]Because the parties' Rule 30(b)(6) dispute centers around whether underwriting is an appropriate deposition question topic, the court will focus on Topics Nos. 1-4, 7, 9-10, and 25, the eight topics that Mr. Cooper represents relate to the underwriting of the relevant policies.

- 7 -

for testimony on materials that do not bear on the interpretation of the Policies or their exclusions. *See Krantz v. State Farm Fire & Cas. Co.*, 2016 WL 320148, at \*5 (M.D. La. Jan. 25, 2016). Accordingly, Topics Nos. 2-3, 7, 9, and 10 are too broad.

2

Topic No. 25 is deficient because it fails to specify a source of information and time period. Topic No. 25 concerns communications between the deponent and "any other third-party." P. App. (ECF No. 39-2) at 79. "District courts in this circuit have held that a topic that covers information 'from any source' is improper under Rule 30(b)(6) because a discovering party does not define a topic with reasonable particularity when it 'requir[es] a deponent to prepare a witness to address unspecified topics from unstated sources[.]'" *MC Trilogy Tex., LLC v. City of Heath*, 2024 WL 1641233, at \*4 (N.D. Tex. Apr. 16, 2024) (Fitzwater, J.) (alterations in original) (citation omitted). It is also unclear whether Topic No. 25 is limited to the time period surrounding Mr. Cooper's claim. "[D]istrict courts in this circuit 'routinely [find]' 'topics with no temporal restriction or element' to be 'overbroad' under Rule 30(b)(6)." *Id.* (alteration in original) (citation omitted). Accordingly, the court holds that Topic No. 25 is too broad.

D

Consistent with the duty to confer in good faith about the matters for examination in anticipated depositions under Rule 30(b)(6), the court orders counsel to meet and confer again regarding the scope of the Rule 30(b)(6) notice. *See MC Trilogy*, 2024 WL 1641233, at \*4. In particular, the court directs the parties confer about reducing the sources of

information, limiting the scope of the notice's subject matter, and confining the relevant time period.  The meeting must occur within 14 days of the date this memorandum opinion and order is filed, and the parties' joint report on the status of their conference must be submitted within 7 days of the date their conference is completed.  The court will then consider modifying any noticed deposition topic that remains in dispute.

## IV

Mr. Cooper also moves to compel answers to Interrogatories Nos. 5, 6, 16 and 17.

## A

"Federal Rule of Civil Procedure 33(a)(2) provides that '[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b).'"  *Lopez*, 327 F.R.D. at 578-79 (alteration in original) (quoting Rule 33(a)(2)).  "Generally, an interrogatory may relate to any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  *Pilver v. Hillsborough Cty.*, 2016 WL 4129282, at *3 (M.D. Fla. Aug. 3, 2016).

"An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."  Rule 33.  A "contention interrogatory" generally refers to "an interrogatory that asks a party to state what it contends, state whether it makes a specified contention, take a position and explain or defend the position concerning how the law applies to facts, or state the legal or theoretical basis for a contention."  *InternetAd Sys., LLC v. ESPN, Inc.*, 2004 WL 5181346, at *2 (N.D. Tex. Oct. 8, 2004) (Fitzwater, J.).  Contention interrogatories are "not necessarily objectionable and

- 9 -

may even be advisable." *Id.* Rule 33(c) and the pertinent Advisory Committee notes support the conclusion that "it is within a court's discretion to decide when an otherwise-proper interrogatory must be answered." *Id.* And "the court may order that such an interrogatory need not be answered until after designated discovery has been completed or until a pre-trial conference or other later time." *Id.* (quoting *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 333 (N.D. Cal. 1985)).

B

The court begins with Mr. Cooper's Interrogatories Nos. 5 and 6.

1

Mr. Cooper's Interrogatory No. 5 asks National Union to "[d]escribe the circumstances in which [it] first anticipated litigation concerning Mr. Cooper's Claim, including the date on which litigation was first anticipated, by whom, and why." P. App. (ECF No. 39-2) at 89. Mr. Cooper's Interrogatory No. 6 asks National Union to "[d]escribe the circumstances in which [it] first retained outside counsel in connection with Mr. Cooper's Claim, including the date on which counsel was first retained, the identity of each Person involved in the decision to retain counsel, and the reason(s) for the retention." *Id.* National Union objects to these interrogatories, contending that they are irrelevant and compound, require National Union to marshal its evidence in support of its claims and defenses, and seek privileged information.

2

National Union's boilerplate objections are insufficient to defeat a motion to compel.

- 10 -

*See Hunsinger v. Alpha Cash Buyers, LLC*, 2022 WL 1128730, at *2 (N.D. Tex. Apr. 15, 2022) (Fitzwater, J.). Moreover, Interrogatories Nos. 5 and 6 do not require National Union to divulge information protected by the attorney-client privilege or the work product doctrine. The attorney-client privilege applies "merely to the disclosure of attorney client communications[,]" not underlying facts or the informational context of communications. *In re Tex. Farmers Ins. Exch.*, 990 S.W.2d 337, 341 (Tex. App. 1999).[2] Likewise, the work product doctrine covers documents and materials prepared in anticipation of litigation. *S.E.C. v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006) (Ramirez, J.). Disclosure of the circumstances in which National Union first anticipated litigation or first retained counsel does not require that National Union reveal the substance of protected communications, documents, or materials. *See, e.g.*, *In re Bertucci Contracting Co.*, 2014 WL 2204086, at *8 (E.D. La. May 27, 2014) ("[T]he Court also finds that when the meetings took place, the attendees, and the dates on which the attendees formally retained counsel are underlying facts that are completely discoverable."); *BidPrime, LLC v. SmartProcure, Inc.*, 2018 WL 6588574, at *4 (W.D. Tex. Nov. 13, 2018) (ordering nonmovant to respond to request for

---

[2]Fed. R. Evid. 501 provides that, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." The parties appear to agree that Texas law governs National Union's claim of attorney-client privilege. The applicability of the work product doctrine, however, is governed by federal law. *See Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 17 (N.D. Tex. 2021) (Horan, J.).

production seeking information regarding the date that nonmovant retained counsel).[3]

Accordingly, the court grants National Union's motion to compel responses to Interrogatories Nos. 5 and 6.

C

The court now turns to Mr. Cooper's Interrogatories Nos. 16 and 17.

1

Mr. Cooper's Interrogatory No. 16 asks National Union to "[e]xplain [its] position as to whether Restoration Costs under the Policy may ever include security or system enhancements, improvements, or upgrades to the insured's Computer System." P. App. (ECF No. 39-2) at 90. National Union objects to this interrogatory on the ground that it requires National Union to marshal evidence in support of its claims and defenses, and is vague, ambiguous, and calls for speculation. Mr. Cooper's Interrogatory No. 17 asks National Union to "[e]xplain whether [it] contend[s] that Mr. Cooper has a duty to undertake efforts to prevent or mitigate loss covered under the Policy and, if so, whether the Policy covers the cost of such efforts." *Id.* National Union objects to this interrogatory on the ground that it is compound and requires National Union to marshal evidence in support of

---

[3]The court acknowledges that the "work product doctrine provides protection for both tangible and intangible attorney work product." *MC Trilogy Texas, LLC v. City of Heath*, 2024 WL 346512, at *10 (N.D. Tex. Jan. 29, 2024) (Fitzwater, J.). But "[c]ourts have only extended intangible work product protection to verbal communications between attorneys and clients or witnesses." *Id.* Here, answering Mr. Cooper's Interrogatory No. 5 would not require National Union to divulge the substance of attorney-client or attorney-witness communications in a manner that would impinge attorney work product.

its claims and defenses.

2

The court concludes that Interrogatories Nos. 16 and 17 are contention interrogatories relevant to the parties' claims and defenses. "Many courts exercise the discretion that Rule 33(c) grants and conclude that contention interrogatories need not be answered until later in the discovery process." *InternetAd Sys., LLC*, 2004 WL 5181346, at *2 (citing *B. Braun Med. Inc. v. Abbott Labs.*, 155 F.R.D. 525, 527 (E.D. Pa. 1994)). But the court sees no reason to delay this process in this case. And National Union's remaining boilerplate objections to Interrogatories Nos. 16 and 17 are insufficient to defeat a motion to compel. *See, e.g.*, *Hunsinger*, 2022 WL 1128730, at *2; *Heller v. City of Dallas*, 303 F.R.D. 466, 491 (N.D. Tex. 2014) (Horan, J.) ("The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity." (citation omitted)). National Union need not provide answers that it does not now have, but it must respond to Interrogatories Nos. 16 and 17 to the extent to which it is able, and supplement its responses as required under Rule 26(e)(1)(A). *See Klein v. Fed. Ins. Co.*, 2014 WL 3408355, at *7 (N.D. Tex. July 14, 2014) (Fitzwater, C.J.).[4]

Accordingly, the court grants Mr. Cooper's motion to compel responses to Interrogatories Nos. 16 and 17.

_____

[4]This memorandum opinion and order also qualifies as an order to supplement under Rule 26(e)(1)(B).

- 13 -

V

Finally, Mr. Cooper moves to compel documents that National Union has withheld on the basis of attorney-client privilege and as work product.[5]

A

The court considers first National Union's assertion of attorney-client privilege concerning communications involving in-house and outside counsel.

1

"Under Texas law, the elements of the attorney-client privilege are: '(1) a confidential communication; (2) made for the purpose of facilitating the rendition of professional legal services; (3) between or amongst the client, lawyer, and their representatives; and (4) the privilege has not been waived.'" *Olmos v. David B. Giles P.C.*, 2022 WL 3448641, at *2 (N.D. Tex. Aug. 17, 2022) (Fitzwater, J.) (quoting *Curlee v. United Parcel Serv., Inc. (Ohio)*, 2014 WL 4262036, at *4 (N.D. Tex. Aug. 29, 2014) (Horan, J.)). "The burden is on the party asserting the privilege to demonstrate how each document or communication satisfies these elements." *Id.* (quoting *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473 (N.D. Tex. 2004) (Kaplan, J.)). "A general allegation of privilege is insufficient to meet this burden." *Id.* (quoting *Navigant Consulting*, 220 F.R.D. at 473). Instead, National Union

_____

[5]Mr. Cooper seeks to compel production of the following documents identified in National Union's first amended privilege log: Docs. Nos. 1-13, 18-29, 31-148, 155-56, and 174-78, and NUFIC 003587-003589. After Mr. Cooper filed the instant motion to compel, National Union produced a second amended privilege log. The court will use the document numbers consistent with the parties' briefing and the first amended privilege log ("privilege log").

- 14 -

"must provide sufficient facts by way of detailed affidavits or other evidence to enable the Court to determine whether the privilege exists . . . as to a specific document or communication." *Id.* (alteration in original) (quoting *Celanese Corp. v. Clariant Corp.*, 2015 WL 9269415, at *1 (N.D. Tex. Dec. 21, 2015) (Horan, J.)).

"Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the privilege still must provide 'a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure.'" *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 315 (N.D. Tex. 2009) (Kaplan, J.) (emphasis in original) (quoting *Navigant Consulting*, 220 F.R.D. at 473-74). "In fact, 'resort to *in camera* review is appropriate only after the burdened party has submitted detailed affidavits and other evidence to the extent possible.'" *Id.* (emphasis in original) (quoting *Navigant Consulting*, 220 F.R.D. at 474).

2

National Union has failed to meet its burden to demonstrate that the withheld documents satisfy the elements of attorney-client privilege.

National Union asserts that Victor Kao, Esquire ("Kao"), Assistant General Counsel at AIG, and Michael Keeley, Esquire ("Keeley"), outside counsel, provided legal advice in the withheld communications. But National Union provides little evidence to substantiate that *each withheld communication* was "made for the purpose of facilitating the rendition of professional legal services." *Olmos*, 2022 WL 3448641, at *2 (citation omitted); *see also Charalambopoulos v. Grammer*, 2017 WL 1094394, at *8 (N.D. Tex. Mar. 8, 2017)

- 15 -

(Fitzwater, J.). The mere fact that Kao and Keeley sent or received emails concerning Mr. Cooper's policy, without more, does not render the withheld communications privileged. *See Navigant Consulting*, 220 F.R.D. at 474 (documents were not privileged simply because they were "made by or sent to in-house or outside counsel at a time when [party] was considering possible litigation"). Nor is the timing of Keeley's retention sufficient to demonstrate that each withheld communication satisfies the elements of attorney-client privilege. *See id.*

National Union's privilege log provides little additional support for its assertion of attorney-client privilege. The privilege log describes the withheld communications involving Kao as emails "regarding authority request for underwriting the Mr. Cooper policy." P. App. (ECF No. 39-2) at 115-116. And with respect to the communications involving Keeley, the privilege log indicates that the content concerned the "scope of retention and initial coverage analysis," *id.* at 112-13, as well as "analysis of claim and coverage issues," *id.* at 113-15. These descriptions do not constitute "specific and precise reasons for [National Union's] claim of protection from disclosure[,]" *Microtune*, 258 F.R.D. at 315, particularly when National Union does not dispute that Kao and Keeley are also underwriters or claim adjusters. *See Navigant Consulting*, 220 F.R.D. at 474 ("Where an attorney is functioning in some other capacity—such as an accountant, investigator, or business advisor—there is no privilege." (citation omitted)).

National Union has therefore failed to establish that the documents withheld on the basis of attorney-client privilege are entitled to protection from disclosure.

- 16 -

B

The court turns to the communications that National Union withheld on the basis of work product.

1

The federal work product doctrine found in Rule 26(b)(3) provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial." Rule 26(b)(3)(A). "A document need not be generated in the course of an ongoing lawsuit in order to qualify for work product protection." *Jolivet*, 340 F.R.D. at 17 (citation omitted). "But the primary motivating purpose behind the creation of the document must be to aid in possible future litigation." *Id.* (citation and internal quotation marks omitted). "In the context of an insurance dispute, the question [] whether documents are work product often depends on whether the insurer can point to a definite shift from acting in its ordinary course of business to acting in anticipation of litigation." *Lanelogic, Inc. v. Great Am. Spirit Ins. Co.*, 2010 WL 1839294, at *5 (N.D. Tex. May 6, 2010) (Kaplan, J.).

The burden is on the party seeking work product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial. *See Beasley v. First Am. Real Est. Info. Servs., Inc.*, 2005 WL 1017818, at *3 (N.D. Tex. Apr. 27, 2005) (Kaplan, J.); *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 400 (E.D. Tex. 2003).

> A general allegation of work product protection is insufficient to meet this burden. Instead, a clear showing must be made which sets forth the items or categories objected to and the reasons for that objection. The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the documents constitute work product.

*Jolivet*, 340 F.R.D. at 18 (citation omitted).

2

National Union has failed to meet its burden to demonstrate that the withheld communications are entitled to work product protection.

National Union contends that it underwent a definite shift toward the anticipation of litigation when it received Mr. Cooper's First Notice of Loss. To support this assertion, National Union notes that it retained Keeley in December 2023, and it cites email correspondence from April 2024, in which employees in National Union's financial lines group purported that Mr. Cooper had purchased inadequate coverage for the cyberattack.

Even assuming *arguendo* that National Union anticipated litigation before preparing the withheld communications, National Union has not satisfied its burden of establishing that these documents were prepared for the primary purpose of aiding in litigation as opposed to National Union's coverage determination. *See Lanelogic*, 2010 WL 1839294, at *6. National Union's retention of Keeley does not create a blanket protection over documents prepared thereafter, particularly where National Union provides no evidence to rebut Mr. Cooper's contention that Keeley's retention was for an ordinary business purpose, such as claim adjustment. *See id.* (retention of law firm as "coverage counsel" did not sufficiently

demonstrate that documents prepared thereafter were entitled to protection).  Moreover, the fact that National Union representatives may have discussed "claim and coverage issues," P. App. (ECF No. 39-2) at 113-115, does not, by itself, entitle the withheld communications to work product protection.  *Lanelogic*, 2010 WL 1839294, at *6 (documents pertaining to "potential coverage issues" were not entitled to work product protection).  Nor is National Union's broad assertion that the covered communications "include mental impressions, conclusions, opinions, and legal theories of National Union's representatives," D. Resp. (ECF No. 44-1) at 29, adequate to satisfy its burden to provide specific facts to enable the court to determine whether particular documents constitute work product.  *See Jolivet*, 340 F.R.D. at 18.

Accordingly, the court holds that National Union has failed to meet its burden to establish that the withheld documents are entitled to protection under the attorney-client privilege or the work product doctrine, and it grants Mr. Cooper's motion to compel with respect to the noticed documents.  *See supra* note 5.  National Union may, however, redact from the documents produced any statements revealing the opinions, evaluations, and other mental processes of its attorneys bearing on litigation strategy.  *See Lanelogic*, 2010 WL 1839294, at *6 (allowing the same).

\* \* \*

For the reasons explained, the court grants the motion to compel in part, and it orders the parties to meet and confer regarding Mr. Cooper's Rule 30(b)(6) notice, after which the court will consider modifying any noticed deposition topic that remains in dispute.

**SO ORDERED**.

March 19, 2026.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE