IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MR. COOPER GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-2857-D |
| | § | |
| NATIONAL UNION FIRE | § | |
| INSURANCE COMPANY OF | § | |
| PITTSBURGH, PA, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

The court now decides two discovery-related motions in this case: defendant National Union Fire Insurance Company of Pittsburgh, PA's ("National Union's") May 1, 2026 amended motion to compel discovery from plaintiff Mr. Cooper Group, Inc. ("Mr. Cooper"), and Mr. Cooper's May 5, 2026 combined motion for sanctions and second motion to compel discovery from National Union.

For the reasons that follow, the court grants in part and denies in part both motions; orders Mr. Cooper to submit documents for *in camera* inspection; allows National Union to file supplemental materials in support of its invocation of the opinion work product doctrine; and orders the parties to meet and confer regarding an extension of the discovery deadline.

I

The relevant background facts of this case are largely set out in a prior memorandum opinion and order and need not be repeated at length for the purpose of deciding the two

motions at issue.[1]  On March 19, 2026 the court granted in part Mr. Cooper's motion to compel answers to interrogatories and the production of documents that National Union had withheld.[2]  Mr. Cooper asserts that National Union has failed to comply with the March 19 memorandum opinion and order, moves again to compel discovery from National Union, and requests that the court sanction National Union for its purported noncompliance.  National Union moves to compel Mr. Cooper to provide an amended privilege log and to produce documents that it has withheld on the basis of the attorney-client privilege.  The court granted National Union's request for expedited consideration of its May 1, 2026 amended motion to compel[3] and now decides the motions on the briefs, without oral argument.

## II

The court turns first to National Union's motion to compel.

## A

National Union contends that Mr. Cooper's third revised privilege log ("Mr. Cooper's privilege log") is deficient insofar as it contains boilerplate assertions of attorney-client privilege.  Consequently, National Union moves to compel Mr. Cooper to provide an amended privilege log that complies with Fed. R. Civ. P. 26, and also moves to compel

---

[1]*Mr. Cooper Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2026 WL 773091, at *1 (N.D. Tex. Mar. 19, 2026) (Fitzwater, J.).

[2]*See id.*

[3]In an order filed May 4, 2026, the court granted the request for expedited consideration to the following extent: "After the motion to compel becomes ripe under the usual briefing rules, the court will attempt to decide the motion as expeditiously as possible."

production of "all documents for which Mr. Cooper has failed to provide adequate privilege descriptions." D. Br. (ECF No. 56-1) at 14.

National Union also maintains that Mr. Cooper has improperly withheld: (i) communications in which no attorney is listed as a participant; (ii) communications with third-party entities; and (iii) communications in which it appears that attorney participants acted for purposes other than providing legal advice. Mr. Cooper responds by submitting the declaration of Carlos Pelayo, Esquire ("Pelayo"), its chief legal officer during the cyberattack, in which Pelayo addresses the basis for Mr. Cooper's assertion of privilege for each document that National Union's motion specifically identifies.

B

The court initially considers National Union's contention that Mr. Cooper's privilege log is deficient.

1

Under Rule 26(b)(5), a party asserting a claim of privilege as to otherwise discoverable information must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Blanket assertions of privilege are unacceptable, and the court and other parties must be able to test the merits of a privilege claim. *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982) (citing *United States v. Davis*, 636 F.2d 1028, 1044

- 3 -

n.20 (5th Cir. Unit A Feb. 1981)).  Assertions of privilege as to otherwise discoverable information must be supported by a privilege log "sufficient to establish each element of the claimed privilege."  *United States v. Louisiana*, 2015 WL 4619561, at *2 (M.D. La. July 31, 2015); *see also Serv. Lloyds Ins. Co. v. N. Am. Risk Srvcs, Inc.*, 2021 WL 148054, at *2 (W.D. Tex. Jan. 15, 2021) ("[C]ompliance is generally accomplished with a privilege log that identifies the documents by date, names of the author or authors and recipient or recipients, and generally describes the subject matter.").

2

National Union's motion lacks the requisite level of specificity to enable the court to evaluate the merits of its objections to most of Mr. Cooper's privilege log entries.  In order to assess the merits of National Union's motion to compel, the court must be able to ascertain which privilege log entries National Union contends are deficient and why.  *See, e.g.*, *Fox v. Hunt S. Grp., LLC*, 2019 WL 13128594, at *1 (S.D. Miss. Apr. 2, 2019) ("Plaintiffs' motions to compel lack the requisite level of specificity for the Court to evaluate the merits of Plaintiffs' generalized objections as they apply to the privilege logs.").  Although National Union moves to compel documents covered by 2,300 entries in Mr. Cooper's privilege log, its motion only references a select number.  The court's review is therefore focused on those documents specifically identified.  *See Okla. Hosp. Med. Physicians, LLC v. Gottlieb LLC*, 2025 WL 3539162, at *4 (N.D. Tex. Dec. 10, 2025) (Fitzwater, J.) (focusing on entries that plaintiffs "specifically identified").

- 4 -

A review of these entries shows that, where applicable, Mr. Cooper has identified the dates, authors, recipients, and general subject matter of each withheld document or communication that National Union has specifically identified.  Moreover, the descriptions offered are not the conclusory kind of descriptions—such as "email" or "legal advice"—that would generally render a privilege log deficient.  *Kunze v. Scott*, 2021 WL 4907064, at *3 (N.D. Tex. Oct. 21, 2021) (Godbey, J.) (citing *Meador v. Starr Indem. & Liab. Co.*, 2020 WL 8256370, at *5 (E.D. La. Sept. 1, 2020)).  Therefore, the court holds that Mr. Cooper's privilege log is sufficient, with one exception: insofar as Mr. Cooper's privilege log has omitted authors or recipients of withheld communications, it must provide National Union an amended privilege log with a complete list of the omitted authors or recipients.

Even if the court assumes, however, that some entries that National Union cites as being deficient are so, this would not compel the disclosure of the underlying documents. This is because Mr. Cooper has supplemented its privilege log with Pelayo's declaration. *See, e.g.*, *In re Loc. TV Advert. Antitrust Litig.*, 2025 WL 681193, at *11 (N.D. Ill. Feb. 21, 2025) ("Compliance with Rule 26(b)(5)(A) may be accomplished by providing a privilege log, although it may be necessary to supplement the privilege log with affidavits or declarations if the basis for the claim of privilege cannot be adequately assessed from the privilege log." (citation omitted)), *rec. adopted*, 2025 WL 683757 (N.D. Ill. Mar. 3, 2025), *rec. adopted*, 2025 WL 2962468 (N.D. Ill. Oct. 20, 2025).

Accordingly, to the extent that Mr. Cooper has not already done so, it is ordered to provide National Union an amended privilege log with a complete list of authors and recipients to each withheld communication.

## C

The court now considers whether Mr. Cooper has improperly withheld the communications that National Union *has* specifically identified.

### 1

The court holds that Mr. Cooper has satisfied its burden of demonstrating the applicability of the attorney-client privilege with respect to the following documents: PRIV_10001, 10024, 10072, 10142, 10149, 10194, 10195, 10196, 10197, 10305, 10403, 12248.

Mr. Cooper's privilege log and Pelayo's declaration establish that these documents contain confidential communications to and from Mr. Cooper, its representatives, or its attorneys made for the purpose of facilitating the rendition of professional legal services. According to Pelayo, each of these communications contains legal advice or requests for legal advice from one or more law firms that Mr. Cooper retained in connection with the cyberattack. The record establishes that these communications were rendered for legal, as opposed to ordinary business, purposes. *In re Fairway Methanol LLC*, 515 S.W.3d 480, 489 (Tex. App. 2017, no writ) ("[T]he language of Rule 503(b) does not require that the *primary* purpose of the communication be to facilitate the rendition of legal services; it only requires

that the communication be made to facilitate the rendition of legal services." (emphasis in original)). And insofar as these communications do not involve an attorney, Pelayo's declaration demonstrates that they seek or discuss legal advice. *See Seibu Corp. v. KPMG LLP*, 2002 WL 87461, at *2 (N.D. Tex. Jan. 18, 2002) (Kaplan, J.) ("Texas law does not require that a lawyer be the author or recipient of a communication in order for it to be privileged."); *cf. Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 420 (W.D. Tex. 2009) ("Clearly, the emails between legal counsel and clients seeking and/or discussing legal advice are communications subject to the attorney-client privilege.").

Accordingly, the court denies National Union's motion to compel with respect to these documents.

2

Pelayo avers that Mr. Cooper has already produced the following documents under different bates labels: PRIV_10095, 10096, 10097, 10276, 10282, 10283, 10284, 10288, 10289, and 10290. To the extent that Mr. Cooper has already produced the entirety of a requested document without redactions, it need not do so again. *See* Rule 26(b)(2)(C) (the court may limit the extent of discovery when "the discovery sought is unreasonably cumulative or duplicative"); *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 2005 WL 8165676, at *4 (E.D. La. Apr. 4, 2005) (stating that documents already produced need not be produced again).

Accordingly, the court denies National Union's motion to compel with respect to these documents.

3

From the evidence submitted, the court is unable to determine whether Mr. Cooper has met its burden of establishing that the remainder of the documents specifically identified by National Union are protected from disclosure by the attorney-client privilege. But because Mr. Cooper has made an effort to establish the applicability of the attorney-client privilege with "detailed affidavits and other evidence to the extent possible," *Mr. Cooper Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh ("Mr. Cooper I")*, 2026 WL 773091, at *7 (N.D. Tex. Mar. 19, 2026) (Fitzwater, J.) (citation omitted), the court concludes that Mr. Cooper has made a preliminary showing that an *in camera* inspection should be conducted.

Accordingly, within 14 days of the date this memorandum opinion and order is filed, Mr. Cooper must submit the noticed material for *in camera* inspection.[4] Mr. Cooper may either file the material on the docket under seal, or make a manual submission to the court (e.g., PDF documents on a thumb drive delivered to the court). If Mr. Cooper makes a manual submission, the court will order the material retained under seal after it makes a ruling so that the record will be complete in case of any appeal. *See, e.g.*, *Charalambopoulos v. Grammer*, 2017 WL 1094394, at *7 (N.D. Tex. Mar. 8, 2017) (Fitzwater, J.).

---

[4]The documents that Mr. Cooper must submit for *in camera* inspection are identified in its privilege log as follows: PRIV_10040, 10044, 10045, 10067, 10081, 10082, 10112, 10127, 10136, 10137, 10140, 10143, 10145, 10146, 10147, 10162, 10163, 10164, 10168, 10169, 10198, 10203, 10204, 10205, 10207, 10221, 10224, 10234, 10236, 10306, 10308, 10310, 10313, 10315, 10326, 10341, 10342, 10375, 10377, 10383, 10385, 10388, 10410, 10411, 10412, 10413, 10414, 10415, 10416, 10422, 10584, 10586, 10587, 10862, 10868, 10967, 11022, 11249, 11634, 12306, 12377, 12386, 12493, 12617, 12618, and 12619.

III

The court now turns to Mr. Cooper's combined motion to compel and for sanctions.

A

The court first considers whether National Union has properly redacted documents on the basis of the attorney-client privilege or work product doctrine.

1

The court's March 19, 2026 memorandum opinion and order granted Mr. Cooper's motion to compel documents that National Union had withheld on the basis of the attorney-client privilege and work product protection because National Union had failed to meet its burden to establish the applicability of the respective privilege and protection. *Mr. Cooper I*, 2026 WL 773091, at \*6. But the court permitted National Union to "redact from the documents produced any statements revealing the opinions, evaluations, and other mental processes of its attorneys bearing on litigation strategy." *Id.* at 9.

National Union then produced redacted versions of the documents subject to the March 19, 2026 memorandum opinion and order. In light of the discovery obligations set out in *Mr. Cooper I*, National Union also voluntarily produced additional redacted documents. Mr. Cooper now contends that National Union improperly redacted discoverable information and moves to compel the production of unredacted versions of certain documents.[5] National Union responds that the redacted information is protected opinion

---

[5]The documents subject to the court's March 19, 2026 memorandum opinion and order and Mr. Cooper's instant motion to compel are identified in National Union's fifth amended privilege log ("National Union's privilege log") as follows: NUFIC 003587-90,

work product, and it has submitted unredacted versions of these documents for *in camera* review.

2

Opinion work product includes "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *See* Rule 26(b)(3)(B). The party resisting discovery of opinion work product bears the burden of establishing that the withheld information is protected work product. *See Mr. Cooper I*, 2026 WL 773091, at *8. To satisfy this burden, "[t]he proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the [information sought] constitute[s] work product." *Id.* (quoting *Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 17 (N.D. Tex. 2021) (Horan, J.)). If the party resisting discovery satisfies its burden of demonstrating that the withheld information is opinion work product, the party seeking discovery must demonstrate "a compelling need for the information." *SEC v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006) (Ramirez, J.) (citing *Varel v. Banc One Capital Partners, Inc.*, 1997 WL 86457, at *5 (N.D. Tex. Feb. 25, 1997) (Boyle, J.)); *see also In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982) (requiring

---

004629-32, 004813-18, 004831-33, 004844-47, 004848-52, 004853-58, 004859-64, 005090, 005110-25, 005139-54, 005179-89, 005190-5200, 005201-12, 005226-37, 005238-50, 005269-81, 005295-5308, 005309-22, 005323-37, 005338-52, and 005353-68. The additional redacted documents subject to Mr. Cooper's instant motion to compel are identified in National Union's privilege log as follows: NUFIC 004577-78, 004583-86, 004591-94, 004597-4600, 004609-12, 004616-19, 004620-23, 004625-28, 005427-32, 005433-38, 005439-44, 005451-57, 005458-66, 005467-75, 005476, 005513-16, and 005517-19.

"higher showing" for opinion work product and noting that "[s]ome courts have [even] provided an almost absolute protection for such materials").

3

National Union has failed to meet its burden to establish that the redacted information is opinion work product. National Union's privilege log contains only general descriptions of the redacted information that recite the elements of the work product doctrine. Such allegations fail to satisfy National Union's burden to demonstrate that the redacted information is opinion work product. *See Jolivet*, 340 F.R.D. at 18; *Bramlett v. Med. Protective Co.*, 2013 WL 12123515, at *3 (N.D. Tex. June 25, 2013) (Stickney, J.) (rejecting "blanket assertions of work product protection"). In the appendix to its response, National Union includes the declaration of Mark Wolin ("Wolin"), the primary claims adjuster responsible for Mr. Cooper's insurance claim. Although Wolin's declaration describes the circumstances under which certain documents were created, it fails to provide sufficient detail to enable the court to determine that each redacted document contains opinion work product. *See Jolivet*, 340 F.R.D. at 17. For similar reasons, *in camera* review is premature. *See Orchestrate HR, Inc. v. Trombetta*, 2014 WL 884742, at *4 (N.D. Tex. Feb. 27, 2014) (Horan, J.) (noting that tendering messages for *in camera* review, without detailed affidavits or other evidence, would be premature).

But because opinion work product is subject to heightened protection, *Int'l Sys. & Controls Corp.*, 693 F.2d at 1240, the court will give National Union another opportunity to submit detailed affidavits, declarations, or other evidence to enable the court to determine

that the redacted information can be properly withheld from discovery. *See Orchestrate*, 2014 WL 884742, at \*4. These supplemental materials must be filed within 14 days from the date this memorandum opinion and order is filed. The court will then consider National Union's assertion of opinion work product protection and decide whether *in camera* inspection is appropriate. If National Union fails to make the required showing as to a particular document, the court will grant Mr. Cooper's motion to compel an unredacted version of that document. *See supra* note 4.

B

Mr. Cooper also seeks to compel the production of spreadsheets that National Union has withheld on the basis that they contain proprietary information and are therefore protected by the trade secret privilege.[6]

1

Because the court is exercising diversity jurisdiction, Texas law governs National Union's assertion of the trade secret privilege. *See* Fed. R. Evid. 501. Under Texas Rule of Evidence 507, "[a] person has a privilege to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, unless the court finds that nondisclosure will tend to conceal fraud or otherwise work injustice." Tex. R. Evid. 507(a). The Supreme Court of Texas has established the following burden-shifting framework for analyzing claims of trade secret privilege under Rule 507:

---

[6]These documents are identified in National Union's privilege log as Priv. Id. Nos. 179-81.

- 12 -

> First, the party resisting discovery must establish that the information is a trade secret. The burden then shifts to the requesting party to establish that the information is necessary for a fair adjudication of its claims. If the requesting party meets this burden, the trial court should ordinarily compel disclosure of the information, subject to an appropriate protective order. In each circumstance, the trial court must weigh the degree of the requesting party's need for the information with the potential harm of disclosure to the resisting party.

*In re Cont'l Gen. Tire, Inc.*, 979 S.W.2d 609, 613 (Tex. 1998) (footnote omitted).

2

The court considers first whether National Union, as the party resisting discovery, has met its burden to establish that the requested information is a trade secret.

A "trade secret is information which derives independent economic value from being not generally known or readily ascertainable through proper means." *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022). Texas courts weigh six factors to determine the existence of a trade secret:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F.3d 477, 492 (5th Cir. 2016) (quoting *In re Union Pac. R.R. Co.*, 294 S.W.3d 589, 592 (Tex. 2009)). "The party claiming

a trade secret is not required to satisfy all six factors." *In re 4X Indus., LLC*, 639 S.W.3d 801, 808 (Tex. App. 2021) (citing *In re Bass*, 113 S.W.3d 735, 740 (Tex. 2003)).

In support of its assertion of the trade secret privilege, National Union offers the declaration of Christopher O'Connor ("O'Connor"), who is the Head of Corporate Accounts for Professional Liability/Cyber North America for AIG and oversees the underwriting of policies used by National Union. O'Connor avers that the withheld spreadsheets "contain confidential data and information, including formulas that allow underwriters to determine pricing for a suite of Fidelity products depending on the industry of the applicant and the policy form being underwritten." D. App. (ECF No. 77-3) at 462 ¶ 5. He maintains that such information "is not known to individuals outside of AIG member underwriting companies," and that these companies, including National Union, undertake extensive measures to protect this information, such as imposing password protection and limiting the ability to transit the spreadsheets. *Id.* at 462-63 ¶ 6. O'Connor also asserts that the spreadsheets "are the product of significant time and expense by AIG member underwriting companies," and that "[t]he formulas and functional tools therein cannot be duplicated by non-AIG member underwriting companies and non-AIG member underwriting companies' personnel." *Id.* at 463 ¶ 7.

The court concludes, based on O'Connor's declaration and the absence of any evidence to the contrary, that the withheld spreadsheets contain trade secrets entitled to protection under Tex. R. Evid. 507(a).

3

The burden now shifts to Mr. Cooper to establish that the information it seeks is necessary for a fair adjudication of its claims.

"Whether the requested information is necessary to a fair adjudication of a party's claims depends on the nature of the information and the context of the case." *In re C-Automation, Inc.*, 698 S.W.3d 87, 98 (Tex. App. 2024, no pet.) (citing *4X Indus., LLC*, 639 S.W.3d at 810). "This showing requires more than general assertions of unfairness or merely that the information is relevant." *Id.* (citing *4X Indus., LLC*, 639 S.W.3d at 810). Mr. Cooper, as the party seeking production of the trade secrets, "must make a 'particularized showing' that the information is necessary to prove one or more material elements of its claim and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit." *Id.* (citation omitted). Mr. Cooper, as the party seeking trade secret information, "cannot merely assert unfairness but must demonstrate with specificity exactly how the lack of the information will impair the presentation of the case on the merits to the point that an unjust result is a real, rather than a merely possible, threat." *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 733 (Tex. 2003). "This is a 'heightened burden,' and requires the requesting party to present evidence." *In re C-Automation, Inc.*, 698 S.W.3d at 98-99 (quoting *4X Indus., LLC*, 639 S.W.3d at 810).

Mr. Cooper asserts that underwriting information is relevant. This allegation is alone insufficient to demonstrate the necessity of the requested information. *See id.* at 98. Mr. Cooper also maintains that, even if the requested spreadsheets contain trade secrets, National

Union may not withhold them because there is a protective order in place.  But the "ability of [a] protective order to limit harm from disclosure of [a] trade secret becomes [a] factor only if trade secrets are necessary and must be disclosed."  *4X Indus.*, 639 S.W.3d at 815 (citing *In re Valero Ref.-Tex., L.P.*, 415 S.W.3d 567, 570 (Tex. App. 2013, no writ).

Accordingly, because National Union has established that the spreadsheets contain information entitled to trade secret protection and Mr. Cooper has failed to meet its burden of showing the necessity of such information, the court denies Mr. Cooper's motion to compel production of the spreadsheets.

C

National Union has also withheld a September 5, 2024 communication between Wolin and Guari Chopra (Priv. Id. No. 182) on the basis that this communication is protected by the work product doctrine and common interest privilege.  But National Union has again failed to "provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine" that this communication is attorney work product.  *Mr. Cooper I*, 2026 WL 773091, at *8 (citation omitted).

The common interest privilege is not an independent privilege.  *See Lanelogic, Inc. v. Great Am. Spirit Ins. Co.*, 2010 WL 1839294, at *4 (N.D. Tex. May 6, 2010) (Kaplan, J.). Rather, it is an exception to the waiver of privileged information in cases where information is disclosed to attorneys or co-parties to further a common interest.  *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 712 (5th Cir. 2001).  Therefore, before invoking the common interest

privilege, National Union must satisfy its burden to establish that the withheld communication qualifies for a discovery protection or privilege, which it has not done.

Accordingly, the court grants Mr. Cooper's motion to compel with respect to Priv. Id. No. 182. Consistent with the court's March 19, 2026 memorandum opinion and order, National Union may redact "any statements revealing the opinions, evaluations, and other mental processes of its attorneys bearing on litigation strategy." *Mr. Cooper I*, 2026 WL 773091, at *9. Moreover, according to the procedure set out above, *see supra* at § III(A)(3), National Union may provide supplemental materials detailing the basis for any redactions. If National Union fails to do so within 14 days of the date this memorandum opinion and order is filed, it must provide Mr. Cooper an unredacted version of Priv. Id. No. 182.

D

The court now considers whether National Union has complied with the court's order to fully respond to Interrogatory No. 5.

1

Interrogatory No. 5 asks National Union to "[d]escribe the circumstances in which [it] first anticipated litigation concerning Mr. Cooper's Claim, including the date on which litigation was first anticipated, by whom, and why." D. App. (ECF No. 77-3) at 20. Following the court's decision in *Mr. Cooper I*, National Union provided an amended response to this interrogatory that stated: "National Union first anticipated litigation concerning Mr. Cooper's Claim between December 2023 and February 9, 2024." *Id.* National Union substantiated this response with details of the occurrences that caused it to

- 17 -

first anticipate litigation, including Mr. Cooper's retention of outside counsel in November 2023, adversarial communications with Mr. Cooper's broker that took place in December 2023, and an email from Mr. Cooper's outside counsel on February 9, 2024, in which counsel referenced the possibility of litigation. Wolin's declaration provides additional details regarding events that took place during this two-month period, and he states that he viewed the February 9 email "as the culmination of a shift from National Union's previous relationship with Mr. Cooper." D. App. (ECF No. 77-3) at 459.

Mr. Cooper contends that this amended response is inadequate because National Union provided a two-month date range rather than a specific date. Mr. Cooper also maintains that National Union's amended response is inconsistent with previous answers it has given and the testimony of its representatives.

2

The court concludes that National Union's amended response to Interrogatory No. 5 satisfies its obligations under Rule 33 and the March 19, 2026 memorandum opinion and order.

"Where an interrogatory answer as a whole discloses a conscientious endeavor to understand the question and to answer fully that question, a party's obligation under Rule 33 is satisfied." *Caliber Home Loans, Inc. v. Cove*, 346 F.R.D. 65, 71-72 (N.D. Tex. 2024) (Horan, J.) (citation omitted). Although National Union has not provided Mr. Cooper an exact date on which it first anticipated litigation, National Union has presented extensive

factual details in support of its assertion that it first anticipated litigation between December 2023 and February 9, 2024. Moreover, the nature of this dispute is such that National Union may not have anticipated litigation concerning Mr. Cooper's claim on a precise date that is narrower than a two-month window.

Even if Mr. Cooper is correct that other evidence suggests that National Union first anticipated litigation on a different date, the court need not decide at this juncture whether the proof furnished by National Union is sufficient to establish the applicability of the work product protection. Rather, the question before the court is whether National Union's answer meets the requirements of Rule 33. That a party has provided inconsistent discovery responses that may subject it to impeachment does not mean it has failed to comply with its discovery obligations.

Because it appears that National Union has conscientiously and to the best of its ability endeavored to provide a complete response to Interrogatory No. 5, the court finds no basis to require that National Union further supplement its response.

E

Finally, the court turns to Mr. Cooper's request for sanctions under Rule 37(b)(2)(A).

1

Mr. Cooper asserts that National Union failed to abide by the March 19, 2026 memorandum opinion and order and requests that the court sanction National Union by

- 19 -

prohibiting it from asserting work product protection for any document or communication before November 14, 2024.

2

Under Rule 37(b)(2)(A), the court may impose sanctions on a party if that party "fails to obey an order to provide or permit discovery." "Sanctions available under Rule 37(b) are appropriate where there is willful disobedience or gross indifference." *Orchestrate HR, Inc. v. Trombetta*, 178 F.Supp.3d 476, 500 (N.D. Tex. 2016) (Horan, J.), *objections overruled sub nom. Orchestratehr, Inc. v. Trombetta*, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016) (Starrett, J.). And "waiver of a privilege . . . is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *Okla. Hosp. Med. Physicians*, 2025 WL 3539162, at *3 (citation and internal quotation marks omitted). Although "the [c]ourt enjoys considerable discretion in deciding whether to impose discovery sanctions, . . . the Fifth Circuit has cautioned that 'sanctions should not be used lightly.'" *Est. of Noble v. Bollin*, 2025 WL 885851, at *4 (E.D. Tex. Mar. 21, 2025) (quoting *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 119 (5th Cir. 1993)).

3

National Union's discovery conduct does not display willful disobedience or gross indifference, or otherwise warrant the imposition of sanctions. To the contrary, National Union appears to have made a good faith effort to comply with the March 19, 2026 memorandum opinion and order by providing a supplemental response to Mr. Cooper's

- 20 -

Interrogatory No. 5 and producing 174 responsive documents, including documents that National Union voluntarily produced after reexamining its privilege log.

Accordingly, the court denies Mr. Cooper's motion for discovery sanctions.[7]

IV

Because the May 21, 2026 discovery deadline has now passed, and there remain discovery disputes in this case, the court orders counsel to meet and confer regarding an extension of the discovery deadline.[8]  The meeting must occur within 14 days of the date this memorandum opinion and order is filed.  Within 7 days after the conference is complete, the parties must submit for court approval a proposed agreed order extending the discovery deadline, or, absent agreement, the parties' respective positions and the reasons for them.

*　　*　　*

For the reasons explained, the court grants in part and denies in part National Union's motion to compel and orders Mr. Cooper to submit the noticed documents, *see supra* note 3, for *in camera* inspection within 14 days of the date this memorandum opinion and order is filed.

The court also grants in part and denies in part Mr. Cooper's combined motion to compel and for sanctions, and allows National Union to file supplemental materials in

---

[7]Because the court has not yet ruled on all issues presented by Mr. Cooper's motion, it will defer consideration of Mr. Cooper's request for attorney's fees incurred in connection with the motion.

[8]Given the nature and purpose of the conference and the desire to reduce cost and delay, the court authorizes counsel to meet via remote means, such by video conference, rather than in person.  But a conference conducted by telephone or text exchanges would not satisfy the requirement that counsel meet and confer.

support of its invocation of the opinion work product doctrine with respect to the noticed documents, *see supra* note 4, within 14 days of the date this memorandum opinion and order is filed.

Finally, the court orders that the parties meet and confer according to the procedure set out above. *See supra* at § IV.

**SO ORDERED**.

June 25, 2026.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE