IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MR. COOPER GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-2857-D |
| | § | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

The court now decides the following discovery-related motions or remainders of motions in this case:

(1) National Union Fire Insurance Company of Pittsburgh, PA's ("National Union's") May 1, 2026 amended motion to compel discovery from plaintiff Mr. Cooper Group, Inc. ("Mr. Cooper");

(2) Mr. Cooper's May 4, 2026 combined motion for sanctions and second motion to compel discovery from National Union;

(3) Mr. Cooper's May 20, 2026 motion to compel discovery from defendant Berkshire Hathaway Specialty Insurance Company ("Berkshire"); and

(4) Mr. Cooper's June 22, 2026 application for fees under Fed. R. Civ. P. 37(a)(5) from National Union.

For the reasons that follow, the court grants in part and denies in part the remainder

of National Union's May 1, 2026 motion; grants in part and denies in part the remainder of Mr. Cooper's May 4, 2026 motion; grants Mr. Cooper's May 20, 2026 motion; and grants Mr. Cooper's June 22, 2026 application for fees, in the amount adjusted by the court. The court also modifies the scheduling order to the extent set out below. *See infra* at § VI.[1]

I

The relevant background facts of this case are largely set out in a prior memorandum opinion and order and need not be repeated at length for purposes of deciding the motions at issue.[2] The court's June 25, 2026 memorandum opinion and order decided some issues raised in National Union's May 1, 2026 motion to compel and Mr. Cooper's May 4, 2026 motion to compel.[3] But with respect to some documents that the parties withheld as privileged, the court determined that an *in camera* inspection might be appropriate and ordered the parties to provide additional materials.[4] Having reviewed these materials, the court takes up the outstanding issues raised by the two motions.

The court also considers for the first time two additional motions: Mr. Cooper's motion to compel discovery from Berkshire and its application for attorney's fees incurred

---

[1]Although the parties have made filings under seal, the court concludes that this memorandum opinion and order should not be sealed. If a party maintains that there are sufficient grounds to warrant sealing, in whole or in part, it may move for this relief.

[2]*Mr. Cooper Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2026 WL 773091, at *1 (N.D. Tex. Mar. 19, 2026) (Fitzwater, J.).

[3]*See generally Mr. Cooper Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2026 WL 1834312, at *1 (N.D. Tex. June 25, 2026) (Fitzwater, J.).

[4]*See id.*

in connection with its January 13, 2026 motion to compel. The court is deciding these motions on the briefs, without oral argument.

II

The court first considers the remaining issues for decision in National Union's May 1, 2026 amended motion to compel.

A

National Union moved to compel Mr. Cooper to produce documents that it had withheld based on attorney-client privilege: documents that National Union contended were "(i) communications in which no attorney is listed as a participant; (ii) communications with third-party entities; and (iii) communications in which it appears that attorney participants acted for purposes other than providing legal advice." *Mr. Cooper Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh ("Mr. Cooper II")*, 2026 WL 1834312, at *1 (N.D. Tex. June 25, 2026) (Fitzwater, J.). In *Mr. Cooper II* the court denied National Union's motion to compel with respect to certain documents for which Mr. Cooper had established that the attorney-client privilege applied or that had already been produced. *Id.* at *3-4. But with respect to other withheld documents, because the court was unable to determine whether Mr. Cooper had met its burden of establishing the attorney-client privilege, it ordered Mr. Cooper to submit these documents for *in camera* inspection. *See id.* at *6.[5]

[5]As a preliminary matter, the court determines that Mr. Cooper has met its burden of demonstrating that *in camera* review is appropriate. *See Mr. Cooper II*, 2026 WL 1834312, at *6 (requiring "detailed affidavits, declarations, or other evidence to enable the court to determine that the redacted information can be properly withheld from discovery"). In connection with its response to National Union's May 1, 2026 motion, Mr. Cooper submitted

B

Having conducted an *in camera* inspection of the submitted documents, the court concludes that the documents in the first category that National Union identifies are covered by the attorney-client privilege.

PRIV_10040, 10081, 10137, 10143, 10145, 10146, and 10147 concern confidential legal advice or requests therefor regarding the engagement of third-party vendors (the "Cyberattack vendors") that were retained and used by counsel for the rendition of legal services. Similarly, PRIV_10416, 10422, 10584, 10586, and 10587 involve communications to counsel aimed at facilitating legal advice. *Id.* "[E]mails between legal counsel and clients seeking and/or discussing legal advice are communications subject to the attorney-client privilege." *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 420 (W.D. Tex. 2009). Moreover, PRIV_10044, 10045, 10162, 10163, 10164, 10168, and 10169 are confidential draft documents with annotations and suggested edits that Mr. Cooper represents were made

---

the declaration of Carlos Pelayo, Esquire ("Pelayo"), its chief legal officer during the cyberattack, in which Pelayo addressed the basis for Mr. Cooper's assertion of privilege for each document that National Union's motion specifically identified. Pelayo's declaration sufficiently demonstrates the appropriateness of *in camera* review. National Union objects to the declaration, contending that Pelayo's descriptions of the documents are conclusory and inadmissible under Fed. R. Evid. 701. The question before the court is whether conducting an *in camera* inspection would assist it in assessing Mr. Cooper's claims of privilege, not whether the Pelayo declaration is admissible at trial. Additionally, National Union's objection is baseless. Pelayo offers more than conclusory descriptions of the withheld documents. He provides detail regarding the subject matter of each document that assists the court in assessing Mr. Cooper's privilege claims, similar to the level of detail provided in National Union's proffered declarations. To require greater detail would risk disclosing the substance of the potentially privileged communications. Accordingly, the court overrules National Union's objection.

by its counsel. *See Longfellow Expl., Partners, Ltd. v. SandRidge Energy, Inc.*, 2010 WL 11506529, at *3 (W.D. Tex. July 12, 2010) (holding that draft letters were protected by the attorney-client privilege under Texas law).

Accordingly, these documents are covered by the attorney-client privilege.

C

The court turns next to the documents that National Union asserts involve third-party participants: Mr. Cooper's Cyberattack vendors.

1

National Union contends that communications involving the Cyberattack vendors are not protected by the attorney-client privilege because these vendors are third-parties. Mr. Cooper responds that communications regarding these vendors are privileged because the vendors were retained by Mr. Cooper's counsel to assist in providing legal advice.

Texas law extends the attorney-client privilege to communications involving "lawyer's representatives." *See* Tex. R. Evid. 503(b).

> [Tex. R. Evid.] 503 defines "lawyer's representative" as "one employed by the lawyer to assist in the rendition of professional legal services." The definition itself confirms that one does not qualify as a lawyer's representative merely by incidentally providing such assistance in the course of employment. Rather, assisting in the rendition of professional legal services must be a significant purpose for which the representative was hired in the first instance. This is consistent with the privilege's general applicability to communications between qualified persons if obtaining legal assistance is "one of the significant purposes" of the communication.

*Univ. of Tex. Sys. v. Franklin Ctr. for Gov't & Pub. Integrity*, 675 S.W.3d 273, 281 (Tex.

2023) (citations omitted).

Carlos Pelayo, Esquire ("Pelayo") avers that Mr. Cooper's outside counsel directly engaged the Cyberattack vendors to assist it in rendering legal advice related to the cyberattack. *See id.* at 286-87 (finding affidavits "probative to the extent they shed light on the formation of the relationship between" client and third party). Although these vendors may have had preexisting relationships with Mr. Cooper, they signed separate engagement agreements with Mr. Cooper's outside counsel due to the altered scope of their work. *See id.* (third party that was retained by and took direction from counsel was lawyer's representative). And Pelayo avers that communications among outside counsel, Mr. Cooper, and the Cyberattack vendors were intended to be confidential. *See id.* ("[T]he parties intended to keep the materials created and reviewed by Kroll confidential.").

National Union points out that some district courts have compelled the disclosure of communications involving third-party vendors retained in the context of data breach litigation, concluding that these vendors were retained for ordinary business purposes. *See, e.g.*, *Leonard v. McMenamins Inc.*, 2023 WL 8447918, at *3 (W.D. Wash. Dec. 6, 2023) (discussing cases). The court acknowledges that the fact that the Cyberattack vendors were retained through counsel does not alone render privileged each communication in which they were involved. *See, e.g.*, *id.* The court's *in camera* review therefore also focuses on whether Mr. Cooper has demonstrated that the relevant communication was "made to facilitate the rendition of professional legal services." Tex. R. Evid. 503(b)(1).

2

Having conducted an *in camera* inspection, the court concludes that Mr. Cooper has satisfied its burden of establishing the attorney-client privilege with respect to the following documents: PRIV_10310, 10410, 10411, 10412, 10413, 10414, 10415, and 11634. These communications were made to facilitate the rendition of professional legal services, and the court concludes that the third parties included in these communications were acting in their capacity as representatives of Mr. Cooper's counsel.

But Mr. Cooper has not met its burden of establishing that the following documents were made to facilitate the rendition of professional legal services, as opposed to ordinary business purposes such as remediation: PRIV_10221, 10234, 10236, 10326, 10868, 10967, 11022, 11249, and 12377. Although "the language of Rule 503(b) does not require that the *primary purpose* of the communication be to facilitate the rendition of legal services," *In re Fairway Methanol LLC*, 515 S.W.3d 480, 489 (Tex. App. 2017, no writ) (emphasis in original), it is unclear whether these communications were made to facilitate the rendition of professional legal services at all. Pelayo's declaration does not provide sufficient clarity as to the scope and nature of the work performed by the Cyberattack vendors. And the noticed documents suggest that, although Mr. Cooper's counsel hired the Cyberattack vendors and the invoices for their work were routed through counsel, the vendors' work included ordinary-course investigation and remediation. *See, e.g.*, *Leonard*, 2023 WL 8447918, at *4; *Guo Wengui v. Clark Hill, PLC*, 338 F.R.D. 7, 14 (D.D.C. 2021); *cf. In re Target Corp. Customer Data Sec. Breach Litig.*, 2015 WL 6777384, at *2 (D. Minn. Oct. 23,

2015) (noting that Target separated its investigation into two tracks, one for ordinary-course investigation and one for legal advice). Therefore, Mr. Cooper has not satisfied its burden of demonstrating that these communication are entitled to protection under the attorney-client privilege.

D

Finally, the court turns to the communications that National Union contends relate only to business activities.

The court concludes that the following communications are entitled to attorney-client privilege: PRIV_ 10112, 10127, 10136, 10140, 10198, 10203, 10204, 10205, 10207, 10224, 10306, 10308, 10341, 10375, 10377, 10383, 10385, 10388, 12306, 12386, 12617, 12618, and 12619. It is apparent on the face of these communications that the copied attorneys were acting in their legal capacity and therefore that the communications were made to facilitate the rendition of professional legal services.

But Mr. Cooper has not satisfied its burden of demonstrating that the following communications are privileged: PRIV_10067, 10082, 10313, 10315, 10342, 10862, and 12493. With respect to these communications, Mr. Cooper has not shown that its attorneys were functioning in a legal capacity, as opposed to "some other capacity—such as an . . . investigator[] or business advisor." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 474 (N.D. Tex. 2004) (Kaplan, J.) (citation omitted); *cf. Leonard*, 2023 WL 8447918, at *3 ("[M]ere delegation of business functions to an attorney is insufficient to shield otherwise unprotected factual investigation from discovery.").

E

Accordingly, the court grants National Union's motion to compel with respect to PRIV_10067, 10082, 10221, 10234, 10236, 10313, 10315, 10326, 10342, 10862, 10868, 10967, 11022, 11249, 12377, and 12493.[6]

But it denies the motion with respect to PRIV_10040, 10044, 10045, 10081, 10112, 10127, 10136, 10137, 10140, 10143, 10145, 10146, 10147, 10162, 10163, 10164, 10168, 10169, 10198, 10203, 10204, 10205, 10207, 10224, 10306, 10308, 10310, 10341, 10375, 10377, 10383, 10385, 10388, 10410, 10411, 10412, 10413, 10414, 10415, 10416, 10422, 10584, 10586, 10587, 11634, 12306, 12386, 12617, 12618, and 12619.

Because the court is granting in part and denying it part National Union's motion to compel, and because Mr. Cooper's nondisclosure of the documents subject to National Union's motion was substantially justified, the court concludes that the parties should bear their own fees and expenses incurred in connection with this motion and National Union's objection to the Pelayo declaration. *See* Rule 37(a)(5)(A)(ii), (C); *Seidner v. Kimberly-Clark Corp.*, 2023 WL 11981126, at *8 (N.D. Tex. Dec. 13, 2023) (Toliver, J.).

---

[6]Mr. Cooper is not required to produce again any document that it has already produced. *See* Rule 26(b)(2)(C) (the court may limit the extent of discovery when "the discovery sought is unreasonably cumulative or duplicative"); *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 2005 WL 8165676, at *4 (E.D. La. Apr. 4, 2005) (stating that documents already produced need not be produced again).

III

The court now considers the remaining issues for decision in Mr. Cooper's May 4, 2026 motion to compel.

A

In *Mr. Cooper Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh ("Mr. Cooper I")*, 2026 WL 773091 (N.D. Tex. Mar. 19, 2026) (Fitzwater, J.), the court granted Mr. Cooper's January 13, 2026 motion to compel with respect to certain documents that National Union had withheld from discovery on the basis of the attorney-client privilege and work product protection. *See id.* at *9. But it allowed National Union to "redact from the documents produced any statements revealing the opinions, evaluations, and other mental processes of its attorneys bearing on litigation strategy." *Id.* at *9. National Union then produced the documents subject to that order, and it voluntarily produced 174 additional documents after reexamining its privilege log. Many of these documents contained redactions. Mr. Cooper then filed a second motion to compel and for sanctions, contending that National Union had improperly redacted documents. National Union responded that the redacted information constitutes protected opinion work product.

National Union furnished these documents for *in camera* review. But the court determined that *in camera* review was premature because National Union had not fulfilled its initial burden to demonstrate that such an inspection was appropriate. *See Mr. Cooper II*, 2026 WL 1834312, at *5. Because opinion work product is subject to heightened protection, the court gave National Union an opportunity to "to submit detailed affidavits, declarations,

or other evidence to enable the court to determine that the redacted information can be properly withheld from discovery." *Id.* at *6.

National Union then submitted to the court the supplemental declarations of Mark Wolin ("Wolin"), the primary claims adjuster responsible for Mr. Cooper's insurance claim, and Sarah R. Clark ("Clark"), Esquire, an attorney and vice president at Fidelity Claims. Although in *Mr. Cooper II* the court did not state that Mr. Cooper could respond to the supplemental materials, Mr. Cooper submitted an objection contesting the veracity of Clark's claims of privilege, to which National Union filed a response. After reviewing the parties' filings, the court is satisfied that National Union has fulfilled its burden of demonstrating that *in camera* review is appropriate. Clark's descriptions of each document provide the court detailed evidence that enables it to reasonably infer that the redacted information contains opinion work product. *See Mr. Cooper II*, 2026 WL 1834312, at *6.

B

Before considering whether National Union's redactions were proper, the court must determine the date on which National Union first anticipated litigation.

National Union contends that it anticipated litigation at some point between December 2023 and February 9, 2024. Wolin's and Clark's declarations describe events that took place between November 2023 and February 9, 2024 that they maintain led National Union to anticipate litigation. These include Mr. Cooper's retention of outside counsel in November 2023, adversarial communications with Mr. Cooper's broker that took place in December 2023, and an email from Mr. Cooper's outside counsel on February 9, 2024, in which counsel

referenced the possibility of litigation. Clark also avers that, during this time, National Union became increasingly aware of its own position that the extent of loss suffered by Mr. Cooper was largely not the type of loss typically covered by Mr. Cooper's insurance policies.

"[C]ourts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies." *Lanelogic, Inc. v. Great Am. Spirit Ins. Co.*, 2010 WL 1839294, at *5 (N.D. Tex. May 6, 2010) (Kaplan, J.) (alteration in original) (quoting *Douga v. D & A Boat Rentals, Inc.*, 2007 WL 1428678 at *4 (W.D. La. May 10, 2007)). "[E]ven though litigation is pending or may eventually ensue[,] [this] does not cloak such routinely generated documents with work product protection." *Id.* (first alteration in original) (quoting *Piatkowski v. Abdon Callais Offshore, L.L.C.*, 2000 WL 1145825 at *2 (E.D. La. Aug.11, 2000)). "In the context of an insurance dispute, the question [] whether documents are work product often depends on whether the insurer can point to a definite shift from acting in its ordinary course of business to acting in anticipation of litigation." *Id.*

The court holds that National Union has established that it first anticipated litigation on February 9, 2024, when it received correspondence in which Mr. Cooper's counsel referenced the possibility of a legal dispute. But the court is not persuaded that the events prior to that date signal a "a definite shift" in National Union's relationship with Mr. Cooper. *See id.* Instead, the communications between National Union and Mr. Cooper prior to February 9, 2024, and National Union's related internal communications, appear to be part of National Union's ordinary coverage determination process. *See Beal v. Treasure Chest*

*Casino*, 1999 WL 461970, at *3 (E.D. La. July 1, 1999) ("It cannot be said that an insurer's evaluation of a routine claim is undertaken in anticipation of litigation, though litigation often does result from denial of a claim."). This is likely why National Union did not formally retain outside counsel until April 2024 and did not communicate its coverage position until May 2024. Accordingly, the court holds that National Union has failed to demonstrate that documents prepared by its representatives before February 9, 2024 were prepared in anticipation of litigation.

C

After reviewing National Union's supplemental materials and conducting an *in camera* inspection, the court concludes that National Union properly redacted the following documents: NUFIC 3587-90, 4577-78, 4583-86, 4591-94, 4597-4600, 4609-12, 4616-19, 4620-23, 4625-28, 4629-32, 4813-18, 4831-33, 4844-47, 4848-52, 4853-58,[7] 4859-64, 5090, 5110-25, 5139-54, 5179-89, 5190-5200, 5201-12, 5226-37, 5238-50, 5269-81, 5295-5308, 5309-22, 5323-37, 5338-52, 5353-68, 5476, 5513-16, and 5517-19. The redacted material contains "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *See* Rule 26(b)(3)(B). To compel disclosure of communications involving National Union's representatives' legal assignments

[7]Although relevance-based redactions to otherwise-discoverable documents are generally improper, *Pavillion Bank v. OneBeacon Am. Ins. Co.*, 2013 WL 12126258, at *3 (N.D. Tex. Nov. 13, 2013) (Toliver, J.), the court concludes that the entirety of NUFIC 4853-58 is irrelevant because it concerns other policies not at issue in this lawsuit. *See Mr. Cooper I*, 2026 WL 773091, at *4 ("Other versions of the National Union Policy or Rider that are not at issue here are irrelevant to the claims and defenses in this action.").

to its attorneys would risk revealing National Union's litigation strategy in this case. *See Boze Mem'l, Inc v. Travelers Lloyds Ins. Co.*, 2013 WL 12123897, at *3 (N.D. Tex. Mar. 14, 2013) (Horan, J.) ("[W]ork-product protections apply with particular force to materials prepared in anticipation of litigation that set 'forth the attorney's theory of the case and his litigation strategy.'" (quoting *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975)). The same would hold true for compelling communications related to National Union's settlement reserve authority. *Cf. Edward Wisner Donation v. BP Expl. & Prod., Inc.*, 2015 WL 7079141, at *12 (E.D. La. Nov. 13, 2015) ("A lawyer's evaluation of a client's and its opponent's positions with respect to expected or ongoing settlement negotiations encompass both attorney-client privileged communications and attorney work product."). Because Mr. Cooper has failed to show "a compelling need for [this] information," *SEC v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006) (Ramirez, J.), the court denies its May 4, 2026 motion to compel with respect to these documents.

But National Union's redactions with respect to the following documents are improper: NUFIC 5427-5432, 5433-5438, 5439-5444, 5451-5457, 5458-5466, and 5467-5475. These communications were made prior to the date on which National Union first anticipated litigation. *See supra* at § III(B). And assuming *arguendo* that National Union anticipated litigation before February 9, 2024, National Union still has not demonstrated that "the primary motivating purpose behind the creation of the document[s] [was] to aid in possible future litigation." *Mr. Cooper I*, 2026 WL 773091, at *8 (citation omitted). Notwithstanding the fact that some of these documents contain discussions of legal

arguments, they appear to have been created to facilitate National Union's coverage determination. *See, e.g.*, *Lanelogic*, 2010 WL 1839294, at *6 (retention of coverage counsel to provide legal advice on coverage issues did not signal anticipation of litigation). Moreover, Nationals Union's redactions based on relevance are improper. A party is "not entitled to unilaterally redact information believed to be irrelevant or non-responsive." *Pavillion Bank*, 2013 WL 12126258, at *3; *see also TNA Austl. Pty Ltd. v. PPM Techs., LLC*, 2018 WL 2010277, at *15 (N.D. Tex. Apr. 30, 2018) (Horan, J.) ("[A] responding party cannot . . . redact nonprivileged information from any responsive document because the information is not itself responsive." (citation omitted)).

D

Accordingly, the court grants Mr. Cooper's May 4, 2026 motion to compel with respect to: NUFIC 5427-5432, 5433-5438, 5439-5444, 5451-5457, 5458-5466, and 5467-5475. But it denies the motion with respect to the remaining documents that Mr. Cooper seeks to compel in unredacted form.[8]

Because the court is granting in part and denying it part Mr. Cooper's motion to compel, and because National Union's redaction of the documents subject to Mr. Cooper's motion was substantially justified, the court concludes that the parties should bear their own fees and expenses incurred in connection with this motion. *See* Rule 37(a)(5)(A)(ii), (C);

[8]Although the court is denying Mr. Cooper's motion with respect to some documents, to the extent that these documents contain redactions of information created prior to February 9, 2024, the court orders that National Union produce versions of these documents with such redactions removed.

*Seidner*, 2023 WL 11981126, at *8.

IV

The turns next to Mr. Cooper's May 20, 2026 motion to compel discovery from Berkshire.

A

Mr. Cooper moves to compel Berkshire to produce unredacted copies of claim materials that it has bates-labeled as: BHSI_786-87, 788-98, and 1529. Berkshire responds that the redacted information, which concerns claim ratings and litigation counsel, is irrelevant, proprietary, and protected by the attorney-client privilege and work product protection. The court disagrees.

Berkshire's relevance- and confidentiality-based objections lack merit. As the court has already explained, a responding party may not unilaterally redact information that it believes to be irrelevant. *See Pavillion Bank*, 2013 WL 12126258, at *3; *TNA Austl.*, 2018 WL 2010277, at *15. Moreover, "[c]onfidentiality does not act as a *per se* bar to disclosure or constitute grounds to withhold documents from discovery." *Hunsinger v. SKO Brenner Am., Inc.*, 2014 WL 114348, at *2 (N.D. Tex. Jan. 9, 2014) (Stickney, J.) (emphasis in original). And Berkshire's concerns about the disclosure of its proprietary information is sufficiently addressed by the protective order in entered in this case. *See Pavillion Bank*, 2013 WL 12126258, at *3; *see also Panda Energy Int'l, Inc. v. Calpine Corp.*, 2008 WL 11350196, at *2 (N.D. Tex. July 3, 2008) (Boyle, J.) ("[I]t is never proper to withhold

information based on confidentiality concerns when a protective order is in place[.]").[9]

Berkshire's invocation of the attorney-client privilege also lacks merit. Berkshire has not met its burden of establishing that the information regarding its counsel constitutes "confidential communications made to facilitate the rendition of professional legal services." Tex. R. Evid. 503(b)(1); *cf. Stevens v. Omega Protein, Inc.*, 2002 WL 1022507, at *2 (E.D. La. May 16, 2002) (concluding, under federal law, that the attorney-client privilege does not extend to the identity of lawyers). Rather, Berkshire's briefing and privilege logs suggest that the redactions cover "purely factual information that is not protected by . . . the attorney-client . . . privilege[]." *Hancock v. Chi. Title Ins. Co.*, 2012 WL 12886424, at *3 (N.D. Tex. Sept. 28, 2012) (Toliver, J.).

Berkshire's assertion of the work product protection also fails. Assuming *arguendo* that Berkshire anticipated litigation prior to the creation of these documents, it has not met its burden of demonstrating that the "the primary motivating purpose behind the creation of the document[s] [was] to aid in possible future litigation." *Mr. Cooper I*, 2026 WL 773091, at *8 (citation omitted). Berkshire has not adequately demonstrated that the preparation of claim detail, claim notes, or the assignment of a rating is not part of its ordinary investigation and evaluation. *See Lanelogic*, 2010 WL 1839294, at *5. In fact, Berkshire assigned Mr.

[9]The court authorized National Union to withhold documents based on its assertion of the Texas trade secret privilege despite the entry of a protective order. *See Mr. Cooper II*, 2026 WL 1834312, at *6. But Berkshire is not asserting the Texas trade secret privilege. Instead, it is making a "broad and unspecified objection based on confidentiality[,] [which] is insufficient to satisfy [its] burden as the party resisting discovery." *Panza v. Travelers Pers. Ins. Co.*, 2026 WL 1345981, at *7 (N.D. Tex. May 14, 2026) (Fitzwater, J.) (citation and internal quotation marks omitted).

Cooper's claim a different rating before the date on which it contends it first anticipated litigation, and it did not redact that earlier rating. And even if Berkshire adjusted the claim rating due to the onset of this litigation, that would not transform the primary purpose of the claim notes that contained the rating. Moreover, Gauri Chopra ("Chopra"), the claim handler assigned to Mr. Cooper's claim under its Berkshire excess policy admitted that preparation of claim notes is part of "the way [Berkshire] handle[s] [its] claims." P. App. (ECF No. 72-2) at 112:18; *see also Lanelogic*, 2010 WL 1839294, at *6 (work product protection did not apply to documents that "appear[ed] to have been prepared in the ordinary course of business or primarily for the purpose of assisting defendant with its coverage determination, even after defendant began to anticipate litigation").

Accordingly, the court holds that Berkshire has failed to satisfy its burden to demonstrate that the redacted information in BHSI_786-87, 788-98, and 1529 may properly be withheld from discovery.

B

Mr. Cooper also moves to compel Berkshire to produce unredacted versions of emails produced under the following bates labels: BHSI_3301-05, 3343-48, 3386-88, 3427-32, 3433-36, 3440-43, 3482-87, 3517-18, 3556-57, 3558-61, 3562-66, 3567-70, 3571-75, 3576-81, and 3604-10. Berkshire responds that the redacted information is irrelevant and protected by the work product and common interest doctrines.

For the reasons the court has already explained, Berskhire's relevance-based redactions are improper. *See supra* at § IV(A). Moreover, "[t]he common interest privilege

is not an independent privilege." *Mr. Cooper II*, 2026 WL 1834312, at *7 (citing *Lanelogic*, 2010 WL 1839294, at *4). "Rather, it is an exception to the waiver of privileged information in cases where information is disclosed to attorneys or co-parties to further a common interest." *Id.* (citing *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 712 (5th Cir. 2001)). Therefore, Berkshire's invocation of the common interest privilege relies on the success of its assertion of the work product protection.

The court concludes that Berkshire has failed to satisfy its burden of demonstrating that the redacted information constitutes protected work product. Berkshire's privilege logs and Chopra's affidavit indicate that the redacted information includes internal discussions among Berkshire personnel as well as communications with National Union's claims handlers regarding the selection and retention of counsel. Even if Berkshire anticipated litigation prior to the preparation of these communications, the little detail that Berkshire provides regarding the substance of the redacted information does not enable the court to reasonably conclude that the primary purpose of such communications was "to aid in possible future litigation." *Mr. Cooper I*, 2026 WL 773091, at *8 (citation omitted). A mere recommendation to engage an attorney to assist with the case does not transform an otherwise routine business communication into work product. *See, e.g.*, *Robinson v. De Niro*, 2022 WL 704922, at *9 (S.D.N.Y. Mar. 9, 2022) ("Communications about engagement of a lawyer are not privileged nor work product."). Nor does the inclusion of Berkshire's internal claim rating. *See supra* at § IV(A).

Therefore, Berkshire has not satisfied its burden to demonstrate that the redacted

information in BHSI_3301-05, 3343-48, 3386-88, 3427-32, 3433-36, 3440-43, 3482-87, 3517-18, 3556-57, 3558-61, 3562-66, 3567-70, 3571-75, 3576-81, and 3604-10 may be properly withheld from discovery.

C

Accordingly, the court grants Mr. Cooper's May 20, 2026 motion to compel.

Because the court is granting Mr. Cooper's motion to compel and has determined that none of the exceptions listed in Rule 37(a)(5)(A) applies in this case, the court awards Mr. Cooper its reasonable expenses, including attorney's fees, associated with its motion to compel discovery. *See, e.g.*, *Vista Bank, v. Calcot, Ltd*, 2026 WL 2162453, at *2 (N.D. Tex. July 27, 2026) (Fitzwater, J.). Within 28 days of the date this memorandum opinion and order is filed the parties must meet and confer in an attempt to agree on the amount of reasonable attorney's fees and costs to be awarded to Mr. Cooper. If the parties cannot reach agreement, Mr. Cooper may file a motion for such reasonable attorney's fees and costs. And if the court grants Mr. Cooper relief that is greater than what it seeks in the meet and confer process, the court may award Mr. Cooper additional reasonable attorney's fees and costs incurred in filing its motion for attorney's fees and costs.

V

The court turns to Mr. Cooper's application for fees incurred in connection with its January 13, 2026 motion to compel.

A

Mr. Cooper's January 13, 2026 motion sought to compel National Union to produce

a witness for deposition under Rule 30(b)(6), respond to interrogatories to which National Union objected, and produce documents that National Union withheld as privileged. In *Mr. Cooper I* the court granted that motion in large part but directed the parties to meet and confer regarding the scope of Mr. Cooper's Rule 30(b)(6) notice. *See Mr. Cooper I*, 2026 WL 773091, at *4. Mr. Cooper now moves under Rule 37(a)(5) for $120,000 in fees that it alleges it incurred in preparing and filing that motion to compel and this application for fees. Mr. Cooper represents that it has reduced this amount from $166,932.00.

B

As an initial matter, the court considers the parties' dispute regarding the correct provision of Rule 37 to apply.

Mr. Cooper contends that Rule 37(a)(5)(A) applies. This provision states that, when a motion for an order compelling discovery is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Rule 37(a)(5)(A) (emphasis added).[10]

[10]"[T]he 'opportunity to be heard' that Rule 37(a)(5) requires may be provided 'either on written submissions or in an oral hearing.'" *Bridge Tower Dall. Five LLC v. Greystone Home Builders, LLC*, 2021 WL 3629998, at *5 (N.D. Tex. Apr. 22, 2021) (Horan, J.)

National Union responds that, because the court's order in *Mr. Cooper I* did not grant Mr. Cooper's motion to compel in its entirety, Rule 37(a)(5)(C) is applicable. It provides that "[i]f the motion is granted in part and denied in part, the court may . . ., after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Rule 37(a)(5)(C) (emphasis added).

Ultimately, resolving this dispute over the applicable rule does not materially affect the court's decision regarding Mr. Cooper's application for fees. Rule 37(a)(5)(C) gives the court discretion to apportion reasonable expenses associated with Mr. Cooper's January 13, 2026 motion to compel. Even if the court applied this provision, it would apportion those expenses according to the calculation set out below. This is because, *inter alia*, the court's memorandum opinion and order in *Mr. Cooper I* "granted [Mr. Cooper] substantially all the relief [it] requested," *Hoffman v. L & M Arts*, 2015 WL 3999171, at *6 (N.D. Tex. July 1, 2015) (Fitzwater, J.), and because Mr. Cooper has already applied reductions in calculating the requested amount, *see id.* (noting that other reductions were applied already).

C

The court turns next to National Union's contention that an award of fees is inappropriate because its discovery positions were substantially justified.

"A party's discovery conduct is 'substantially justified under Rule 37 if it is a response to a genuine dispute, or if reasonable people could differ as to the appropriateness

---

(quoting *T-M Vacuum Prod., Inc. v. Taisc, Inc.*, 2008 WL 5082413, at *5 (S.D. Tex. Nov. 25, 2008).

of the contested action.'" *Orthoflex, Inc. v. ThermoTek, Inc.*, 2015 WL 4486756, at *8 (N.D. Tex. July 23, 2015) (Fitzwater, J.) (quoting *S.E.C. v. Kiselak Capital Grp., LLC*, 2012 WL 369450, at *5 (N.D. Tex. Feb.3, 2012) (McBryde, J.)). "The burden is on [National Union] to show that its actions were substantially justified." *Id.*

The court concludes that National Union has not satisfied its burden of demonstrating that its discovery positions taken in connection with Mr. Cooper's January 13, 2026 motion to compel were substantially justified. At best, National Union has established that it had a good faith belief that its positions were meritorious. But whether National Union acted in good faith is irrelevant to whether its positions were substantially justified, which is "an objective test that does not require bad faith." *Alvarez v. Wallace*, 107 F.R.D. 658, 661 (W.D. Tex. 1985).

Accordingly, the court concludes that Mr. Cooper is entitled to recover reasonable attorney's fees incurred in connection with its January 13, 2026 motion to compel.

D

The court must now decide whether the amount of fees that Mr. Cooper requests—$120,000—is reasonable.

In conducting this analysis, the court generally follows a two-step process:[11]

> First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or

[11]Both parties rely on this paradigm in litigating Mr. Cooper's fee application; neither party contends that it is inapposite when determining a fee award under Rule 37.

> inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

*Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010) (some citations omitted). "The lodestar is presumptively reasonable . . . , but the applicant bears the burden of substantiating both the requested hours and the hourly rates." *See HMC RFG Invs. LLC v. Jones*, 2024 WL 2853953, at *1 (N.D. Tex. June 4, 2024) (Fitzwater, J.) (citations omitted).

E

The court begins its lodestar calculation by determining the reasonable hourly rates.

1

"The hourly rates to be used in the lodestar calculation are determined by 'the prevailing market rates in the relevant community.'" *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 6789456, at *15 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007). The relevant legal community is the community where the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). As the fee applicant, Mr. Cooper "bears the burden of demonstrating 'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Barrow*, 2005 WL 6789456, at *15 (quoting *Blum*, 465 U.S. at 895 n.11). The trial court itself is considered an expert as to the reasonableness of attorney's fees and therefore may exercise its own expertise and judgment in making an independent valuation

of appropriate attorney's fees. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *Wachovia Bank, Nat'l Ass'n v. Schlegel*, 2010 WL 4275277, at *2 n.4 (N.D. Tex. Oct. 29. 2010) (Fitzwater, C.J.).

2

Mr. Cooper seeks attorney's fees for managing partner Brian Friel, Esquire ("Friel"), of counsel Sara Moghadam, Esquire ("Moghadam"), partner Benjamin Massarsky, Esquire ("Massarsky"), associate Sydney Warinner, Esquire ("Warriner"), and paralegals Kristen Schumacher ("Schumacher") and Sharon McDermott ("McDermott"). Friel charged an hourly rate of $1057.50; Moghadam charged an hourly rate of $787.50; Massarsky charged an hourly rate of $652.50; Warinner charged an hourly rate of $427.50; and Schumacher and McDermott each charged hourly rates of $270. To support the reasonableness of these rates, Mr. Cooper offers Friel's declaration and the declaration of Justin R. Opitz, Esquire ("Opitz"), a partner at McGuireWoods LLP in Dallas who has practiced law in Texas since 2005. Opitz avers that these hourly rates fall within the reasonable range of rates charged by legal professionals with comparable experience in the Northern District of Texas.[12]

[12]National Union objects to Opitz's declaration on the ground that is conclusory and therefore insufficient to satisfy Mr. Cooper's burden to establish the reasonableness of rates. The court overrules this objection. The court acknowledges that—besides his experience—Opitz does not provide detail regarding the sources that he consulted in arriving at his conclusion that the rates charged by Mr. Cooper's attorneys were reasonable. But this is not a reason to strike Optiz's declaration. Moreover, the Opitz declaration is but one piece of evidence that the court can use to determine whether Mr. Cooper has established that its rates were reasonable, and the court will consider the Opitz declaration alongside its own expertise and judgment, *Primrose*, 382 F.3d at 562, and the other materials offered by Mr. Cooper, *see, e.g.*, *In re Viking Offshore (USA) Inc.*, 2009 WL 2763925, at *8 n.6 (Bankr. S.D. Tex. Aug. 25, 2009) ("Viking's argument goes to the weight to be accorded the

These hourly rates are consistent with the prevailing complex litigation market rates established by this court in recent cases. *See ICM US Operating, LLC v. Industrias Costa Mesa, S.A. de C.V.*, 2025 WL 1646592, at *7 (N.D. Tex. 2025) (Kinkeade, J.) (finding rates of $544.00 to $1,065.00 per hour for partners and $225.00 to $400 per hour for paralegals reasonable); *Crossfirst Bank v. Johnson*, 2026 WL 1664098, at *3 (N.D. Tex. June 9, 2026) (Fitzwater, J.) (finding attorney rates of $650 to $925.00 per hour reasonable). The court acknowledges that Friel's rate falls at the higher end of this range, but it finds that such a rate is reasonable given his 31 years of experience focused exclusively on insurance coverage matters for corporate policyholders. *See Michaels Stores Procurement Co. v. DMR Constr., Inc.*, 2019 WL 399074, at *2 (N.D. Tex. Jan. 31, 2019) (Boyle, J.) ("While some of the rates are on the higher end of those typically seen in the Dallas, Texas, area, they are reasonable given the attorneys' and paralegals' experience."). Accordingly, after considering Opitz's declaration and the court's own knowledge of the rates charged for legal services by attorneys and paralegals of similar skill, experience, and competence, the court finds that the rates charged by Mr. Cooper's attorneys are reasonable.

F

Having determined the reasonable hourly rates for Mr. Cooper's attorneys, the court next considers National Union's objections to the time expended.

---

conclusory statements in the affidavit, not their admissibility."). The court suggests no view on the merits of National Union's separate motion to strike Mr. Cooper's rebuttal experts, which the court is not deciding at this time.

1

The party seeking to recover attorney's fees meets its burden of establishing the number of hours reasonably expended by "presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 2010 WL 3294248, at *2 (N.D. Tex. Aug.20, 2010) (Fitzwater, C.J.) (quoting *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir.1990)). "Exceptionally terse descriptions of activities do not constitute sufficient documentation." *Id.* (citing *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997) (disallowing fees for "research and review of cases" because entry was impermissibly vague); *Cookston v. Freeman, Inc.*, 1999 WL 714760, at *2 (N.D. Tex. Sept. 14, 1999) (Fitzwater, J.) (collecting cases)). "Litigants take their chances when submitting such fee applications, as they provide little information from which to determine the 'reasonableness' of the hours expended on tasks vaguely referred to as 'pleadings,' 'documents,' or 'correspondence' without stating what was done with greater precision." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995). Billing entries must explain the subject matter of the task enough to allow the court to determine whether the time was reasonably expended. *See Fralick v. Plumbers & Pipefitters Nat. Pension Fund*, 2011 WL 487754, at *7 (N.D. Tex. Feb. 11, 2011) (Fitzwater, C.J.). "[T]he court is not obligated *sua sponte* to sift through fee records," and it therefore reviews only the billing entries that National Union has specifically challenged. *Hoffman*, 2015 WL 3999171, at *5 ("It is a common practice for courts to address only those potentially

inadequate entries brought to the court's attention.").

2

Mr. Cooper seeks compensation for 222.1 hours expended by its attorneys and paralegals in preparing January 13, 2026 motion to compel and the instant application for fees. National Union asserts that 222.1 hours is an unreasonable amount of time to be spent on a motion to compel and related briefing. And it points to a number of Mr. Cooper's attorney's billing entries as impermissibly vague or duplicative.

The court declines to adopt a *per se* rule that 222.1 hours is an unreasonable amount of time to expend on a motion to compel and application for fees, especially given the complex nature of this dispute. *See Architectural Granite & Marble, LLC v. Pental*, 2023 WL 2825699, at *2 (N.D. Tex. Jan. 19, 2023) (awarding attorney's fees for a greater number of hours expended on a motion to compel). But the court agrees that Mr. Cooper's billing entry stating "continued work on motion to compel" is impermissibly vague and should be excluded. *Cf. Leroy v. City of Houston*, 906 F.2d 1068, 1080 (5th Cir. 1990) (finding that "Work on Brief" was vague); *Hoffman*, 2015 WL 3999171, at *5 n.6 (agreeing that "Move to compel" was vague).

And the court also agrees that the three January 12, 2026 and January 13, 2026 entries by Mr. Cooper's attorneys regarding the finalization and filing of the motion to compel and supporting materials are duplicative and potentially include clerical tasks. *See Merrick v. Scott*, 2011 WL 1938188, at *6 (N.D. Tex. May 20, 2011) (Fitzwater, C.J.) (noting that filing is a clerical task and excluding hours); *Tovar v. Sw. Bell Tel., L.P.*, 2022 WL 2306926, at *4

(N.D. Tex. June 27, 2022) (Boyle, J.) ("[E]ntries that refer to the same tasks on the same document are duplicative or repetitive work and should be disallowed."). Because these entries are duplicative and contain a mix of clerical and legal work, the court will apply a 50% reduction. *See Omega Hosp., LLC v. Cmty. Ins. Co.*, 2016 WL 1161277, at *5 (E.D. La. Mar. 24, 2016). Therefore, Friel's December 10, 2025 entry for 2.4 hours is excluded; Friel's January 12, 2026 entry for 2.9 hours is reduced to 1.45 hours; Massarsky's January 13, 2026 entry for 3.5 hours is reduced to 1.75 hours; and Moghadam's January 13, 2026 entry for 5.9 hours is reduced to 2.95 hours.[13]

The court concludes that the remainder of the billing entries to which National Union specifically objects are not impermissibly vague because they are "illuminating as to the subject matter" of the work performed and permit the court to conduct meaningful review of the reasonableness of the hours expended. *See Barrow*, 2005 WL 6789456, at *11 (citation omitted).

Accordingly, after applying the foregoing reductions to the $120,000 amount that Mr. Cooper requests, the court finds that the lodestar amount is $112,463.61.

G

The court concludes that no upward or downward adjustment of the lodestar is

[13]In some circumstances, courts have concluded that the movant's own reductions through the exercise of billing judgment remedied deficient billing entries, making further reductions unnecessary. *See Meier v. UHS of Del., Inc.*, 2023 WL 7164909, at *5 (E.D. Tex. Oct. 31, 2023). The court declines to adopt this approach here. Although Mr. Cooper avers that it applied a 28% discount, it has not demonstrated that this discount was an exercise of billing judgment. *See Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996) (concluding movants did not prove that write offs were exercises of billing judgment).

warranted under the *Johnson* factors.[14] *See Johnson*, 488 F.2d at 717-19. "[T]he lodestar . . . is presumed to be reasonable and should only be modified in exceptional cases." *See Restoration 1 Franchise Holding, LLC v. Coast 2 Coast Restoration LLC*, 2026 WL 641854, at *7 (N.D. Tex. Feb. 13, 2026) (Horan, J.), *rec. adopted*, 2026 WL 641082 (N.D. Tex. Mar. 6, 2026) (Fitzwater, J.).

Accordingly, the court awards Mr. Cooper $112,463.61 of fees associated with its January 13, 2026 motion to compel and the instant application for fees.

VI

Having reviewed the parties' joint report regarding extension of the discovery deadline, the court concludes that a 90-day extension of the discovery deadline is warranted. Accordingly, on the date that this memorandum opinion and order is filed, the discovery period in this case shall reopen for 90 days.

Discovery during this period is limited to the disputes raised in the parties' motions to compel that have been decided in this memorandum opinion and order. Within the first 14 days of this period, the parties must produce the documents that the court has compelled them to produce.

Mr. Cooper may conduct the depositions of Melissa Chai and Garin Pace during the 90-day extended discovery period.

[14]Because this is a diversity case, the court has also considered Texas' *Arthur Andersen* factors, which are similar to the *Johnson* factors, and it has concluded that no adjustment of the lodestar is warranted. *See Crossfirst*, 2026 WL 1664098, at *2 n.4 (noting that "[t]he Fifth Circuit has not decided whether the *Johnson* factors control in Texas diversity cases").

The parties shall also have 90 days from the date this memorandum opinion and order is filed to file supplements, not to exceed 15 pages, to their summary judgment briefing. Mr. Cooper may file a separate supplement for each of defendants' summary judgment motions.

Due to this extension of the discovery deadline, the court on its own initiative resets the trial of this case to the two-week docket of February 1, 2027. Because the court has reset this case on its own initiative without determining whether counsel, their clients, or their witnesses have material conflicts—e.g., conflicting settings in cases that are likely to be tried and prepaid vacations—counsel should alert the court to such conflicts before seeking continuances in other cases, canceling vacations, or instructing clients and witnesses to do so. The court may be able to accommodate such conflicts, if given sufficient notice.

N.D. Tex. Civ. R. 40.1 provides, "[u]nless the presiding judge orders otherwise, the granting of a motion for continuance will not extend or revive any deadline that has already expired in a case," including the deadline to designate expert witnesses. Therefore, any relief from an expired deadline must be obtained by motion or agreed order (subject to court approval).[15] Unexpired deadlines based on the prior trial setting, however, are hereby reset so that the parties shall now comply with them on the basis of the new setting.

* * *

For the reasons explained, the court grants in part and denies in part the remainder of National Union's May 1, 2026 motion; grants in part and denies in part the remainder of Mr.

---

[15]Because the court need not decide the issue of attorney's fees at this juncture, the court will defer consideration of Mr. Cooper's request for leave to redesignate an attorney's fees expert.

Cooper's May 4, 2026 motion; grants Mr. Cooper's May, 20, 2026 motion; and grants Mr. Cooper's June 22, 2026 application for fees, in the amount adjusted by the court.

The also court reopens discovery, extends the discovery deadline for 90 days from the date this memorandum opinion and order is filed, and resets the trial of this case to the two-week docket of February 1, 2027.

**SO ORDERED**.

August 20, 2026.

Sidney A. Fitzwater

SIDNEY A. FITZWATER
SENIOR JUDGE